## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**LESLIE SIZEMORE,**

        **Plaintiff,**

        **v.**

**EDGEWOOD BOARD OF EDUCATION, et al.,**

        **Defendants.**

        **Case No. 1:19-cv-555**
        **JUDGE DOUGLAS R. COLE**

## <u>OPINION AND ORDER</u>

This matter comes before the Court on Defendants Amy Ashcraft, Beth Benjamin, Gary Gabbard, Jim Wirtley, Tom York (the "Board Members"), David Slamer ("Principal Slamer"), and the Edgewood Board of Education's (the "Board") Partial Motion to Dismiss Plaintiff's Second Amended Complaint. ("Partial Motion," Doc. 24). (These Defendants are collectively referred to as the "School Defendants," and the subset of the School Defendants consisting of the individual Board Members and the Principal are collectively referred to as the "Individual School Defendants."). The only other Defendant, Daniel Benjamin, previously answered (*see* Doc. 23) and does not join this Partial Motion. This Court heard oral arguments on this Partial Motion, at Plaintiff's request, on March 4, 2020. For the following reasons, the Court **GRANTS** the Partial Motion.

## BACKGROUND

### A.  Sizemore's Allegations In Her Second Amended Complaint.

The allegations in this case, taken from the Second Amended Complaint, stem from the alleged sexual harassment that Leslie Sizemore ("Sizemore"), a janitor at Edgewood Middle School, suffered at the hands of Daniel Benjamin ("Benjamin"), a fellow janitor. (Second Am. Compl. ("SAC"), ¶¶ 17, 20–29, Doc. 21, #204–07[1]). Sizemore alleges that, throughout her employment, from May 24, 2016, through August 10, 2018, Benjamin would frequently text her lewd, offensive, and threatening messages and make obscene gestures in her direction. (*Id.* at ¶¶ 17, 21–22, 41, #204, 207). She claims that, starting "[i]n or about September of 2017 and continuing throughout her employment," she reported this conduct to her supervisor, Teresa Lewis, who is not named in this action. (*Id.* at ¶ 26, #205). Sizemore also alleges that she "repeatedly informed Defendant Board and Teresa Lewis that she did not want to work with Mr. Benjamin," but, unlike her allegation as to Lewis, she does not allege that she told the Board (or any of its members) of Benjamin's purported misconduct. (*Id.* at ¶ 38, #206–07). That is, she does not allege that she told any Board member *why* she did not want to work with Benjamin.

Sizemore also alleges that, sometime around "Nov [sic] of 2017," she received a report from Student B about potential misconduct by Benjamin, specifically that he took a photo of Student A with his cell phone and made a "comment … to be of a sexual nature based on its intonation." (SAC at ¶¶ 30–31, #205–06). She reported this

---

[1] Reference to PageID Number.

too, to Teresa Lewis, Principal Slamer, and Assistant Principal Ruether. (*Id.* at ¶ 32, #206). Shortly thereafter, all the parties met, along with Student B's parents. (*Id.* at ¶ 33). Ultimately, Sizemore learned that the parents declined to pursue the matter. (*Id.* at ¶ 37). Sizemore also alleges, with no supporting facts, that school officials "failed to inform the Police or Sheriff" about any of this. (*Id.* at ¶ 36).

In addition to the conduct described above that allegedly occurred "throughout her employment," Sizemore further alleges that, on one occasion in July 2018, Benjamin sexually assaulted her in a supply closet while the two were getting cleaning supplies. (SAC at ¶¶ 38–39, #206–07). Sizemore asserts that, on August 10, 2018, she notified "Defendant's Human Resource [sic] Department" of that incident of sexual harassment. (*Id.* at ¶ 42, #207). After informing Human Resources, Sizemore left the school building and she never returned to work. (*Id.* at ¶ 43). Instead, she sued the Board, the Board Members (solely in their official capacities), Principal Slamer (solely in his official capacity), and Benjamin.

After Sizemore filed her initial Complaint (Doc. 1), she amended it (Doc. 2), and the School Defendants responded by filing their first Partial Motion to Dismiss (Doc. 11). Sizemore amended her Complaint again, this time with leave of court. (Doc. 21). Based on the same core facts, but with a few additions,[2] Sizemore reasserted the same three claims as before, which are the claims relevant to the instant Motion.

---

[2] In the School Defendants' first Partial Motion to Dismiss, they raised an issue about Sizemore's First Amended Complaint being time-barred. (Defs.' First Partial Mot. to Dismiss, Doc. 11, #107–08). In the instant Motion, the Defendants note Sizemore made "new factual allegations" that may impact this time-bar argument. (Defs.' Partial Mot. at #238). Defendants therefore reserved that argument for summary judgment. (*Id.*).

First, in Count I of her Second Amended Complaint, Sizemore alleges Title VII and Ohio Revised Code Chapter 41 violations against the School Defendants, i.e., the Board, the Board Members (in their official capacities), and Principal Slamer (in his official capacity), asserting discrimination based on sex and sexual harassment. (SAC at ¶¶ 52–54, #208–09). Then, for Count II, she alleges another Title VII and Ohio Revised Code Chapter 41 violation, against those same defendants (in those same capacities), for retaliation and "constructive discharge." (*Id.* at ¶¶ 55–58, #209). Last, in Count III, Sizemore asserts that "Defendant Edgewood Schools," acting under color of state law, violated her constitutional rights, for which she seeks relief under 42 U.S.C. § 1983. (*Id.* at ¶¶ 59–71, #210–11).[3]

## B.   The School Defendants' Second Partial Motion To Dismiss.

The School Defendants responded to the Second Amended Complaint by filing a second Partial Motion to Dismiss. (Defs.' Second Partial Mot. ("Defs.' Partial Mot."), Doc. 24, #233–46). In it, the individuals who are part of this group make six arguments: (1) Title VII does not impose individual official-capacity liability on them (an argument that they raise both as to the sex discrimination claim (Count I) and the retaliation claim (Count II)); (2) they are not liable as individuals in their official capacities for discrimination under Ohio Revised Code Chapter 41; (3) the Title VII retaliation claim against them fails on the merits; (4) the state law retaliation claim against them fails on the merits; (5) naming them in the § 1983 claim in their official

---

[3] Sizemore also asserts two other causes of action, sounding in negligence, against Benjamin, the person who allegedly engaged in the workplace misconduct. Those claims are not at issue here.

capacity was duplicative of the claim against the Board, and thus should be dismissed; and (6) the § 1983 official-capacity claim against them should be dismissed. (*Id.* at #238–39). They further argue that Sizemore's failure to respond to arguments one, two, and four in her response (Defs.' Reply, Doc. 18), to the initial motion to dismiss (Doc. 11), means she has not met her burden as to those arguments. (Defs.' Partial Mot. at #239). For its part, the remaining School Defendant, i.e., the Board, separately argues that three of the claims against it should be dismissed, namely: (1) the Title VII retaliation/constructive discharge claim (Count II), (2) the state law retaliation/constructive discharge claim (the remaining aspect of Count II), and (3) the § 1983 claim. (*Id.*).[4]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Therefore, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). But a pleading must offer more than mere "labels and conclusions," because "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[4] The Board does not seek dismissal of Count I, the sex discrimination/harassment claim under Title VII and corresponding state law. That is not to suggest that the Board agrees that this claim has merit, but only that the Board does not argue that it fails as a matter of law.

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Jones v. Montgomery Cty. Dep't of Jobs & Family Servs.*, No. 3:18-cv-37, 2020 WL 529297 (S.D. Ohio Feb. 3, 2020).

Instead, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *White v. Coventry Health & Life Ins. Co.*, 680 F. App'x 410, 413 (6th Cir. 2017). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To survive a Rule 12(b)(6) motion, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In the discrimination context, a plaintiff is not required to prove a prima facie case to survive a motion to dismiss. *See Swierkiewciz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting the Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss"); *Jackson v. Crosset Co.*, 33 F. App'x 761, 762 (6th Cir. 2002) ("[T]he *McDonnell Douglas* framework is an evidentiary standard, not a pleading standard."). In fact, the Supreme Court has rejected the argument that a Title VII complaint is subject to any kind of heightened pleading standard, because this would "too narrowly constric[t] the role of the pleadings." *Swierkiewciz*, 534 U.S. at 511 (quotation omitted). Instead,

"the ordinary rules for assessing the sufficiency of a complaint apply." *Id.* This does not mean the pleading rules are lessened, though, either. *See Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 449 (6th Cir. 2018) (noting *Swierkiewciz* "offers no gateway for a plaintiff to side-step the plausibility standard laid out in *Twombly* and *Iqbal*"). While true that Sizemore's Second Amended Complaint "need not present detailed factual allegations, it must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [the defendants] discriminated against [Sizemore] with respect to her compensation, terms, conditions, or privileges of employment, because of her … sex[.]" *See Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012) (quotations and citations omitted).

Moreover, while a plaintiff need not establish a prima facie case at the pleading stage, the elements of a prima facie case are nonetheless aspects to consider when determining the plausibility of a discrimination claim. *See, e.g.*, *Towns v. Memphis/Shelby Cty. Health Dep't.*, No. 17-cv-02626, 2019 WL 639050, at *4 (W.D. Tenn. Jan. 25, 2019), *adopting R. & R.*, 2019 WL 639025 (W.D. Tenn. Feb. 14, 2019) ("While a Title VII plaintiff need not establish a prima facie case at the motion to dismiss stage, courts have looked to the prima facie requirements when determining whether a Title VII plaintiff has pleaded an actionable claim."); *White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 WL 3377087, at *4 (S.D. Ohio July 11, 2018) (discussing the prima facie elements in the context of a motion to dismiss several

Title VII claims). Still, the Court must ultimately determine plausibility by employing its "judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The School Defendants move to dismiss, in whole or in part, nearly every claim asserted against them. For the Individual School Defendants, many of their arguments turn on Sizemore having named them individually (albeit solely in their official capacities), while simultaneously suing the Board itself. Beyond that, they also argue that she has failed to meet the requisite pleading standard as to the substance of her claims against them for various reasons. Separately, the Board contends that Sizemore has failed to adequately plead the substance of the claims she asserts against the Board in Counts II and III of her Second Amended Complaint.

The Individual School Defendants' argument that Sizemore cannot bring official-capacity claims against them as individuals, while simultaneously suing the Board, is a threshold issue that cuts across all of the substantive claims, so the Court begins there. As explained below, the Court's analysis is made easier by Sizemore having conceded that the individual claims should be dismissed, so long as the Board is not an arm of the State. The Board is not, and thus her concession controls. And, as her concession applies to all of the individual claims, the Court need not, and thus does not, consider the Individual School Defendants' other arguments for dismissal. Moreover, as there are no facts that Sizemore could allege that would change the Board's legal status under state law, the Court dismisses these claims with prejudice.

8

As for the Board, the Court finds that Sizemore has failed to allege the facts necessary to plausibly assert either (1) a Title VII retaliatory discharge claim (or corresponding state law claim), or (2) § 1983 claim, against the Board. Thus the Court grants the Board's Motion to dismiss Counts II and III of the Complaint, but does so without prejudice, as discussed below. As the Board has not moved to dismiss the Title VII (and corresponding state law claim) set forth in Count I, this Order does not impact that Count.

## A. Sizemore Concedes That The Official-Capacity Claims Against The Individual School Defendants Should Be Dismissed Unless The Board Is An Arm Of The State, Which It Is Not.

Sizemore expressly concedes that, should the Court determine the Board is not an "arm of the state," her official-capacity claims against the Individual School Defendants under Title VII, Chapter 41, and § 1983 all warrant dismissal. (*See* Pl.'s Mem. in Resp. ("Pl.'s Resp."), Doc. 25, #260). Sizemore explains that she sued these individuals in their official capacities solely as a proactive undertaking to address any potential problems that may arise if the Board were to claim that it *was* an arm of the state, and thus subject to Eleventh Amendment immunity in federal court. Sizemore preemptively sought to avoid that prospect by naming the Board Members and Principal Slamer in their official capacities, pursuant to *Ex Parte Young*. 209 U.S. 123, 124–25 (1908).[5]

---

[5] *Ex Parte Young* is an exception to Eleventh Amendment sovereign immunity that permits a federal court to enjoin a "state official" from violating federal law. *Lawson v. Shelby Cty.*, 211 F.3d 331, 335 (6th Cir. 2000). "The idea behind this exception is that a suit against a state officer is not a suit against the state when the remedy sought is an injunction against an illegal action, for an officer is not acting on behalf of the state when he acts illegally." *Id.*

Whatever the potential merits of Sizemore's approach generally, it was an unnecessary undertaking in this case, and thus by her own admission, the individual claims are properly dismissed. That is because, when it comes to local school boards in Ohio, state law—as well as precedent from the United States Supreme Court, this District, and the Ohio Supreme Court—clearly addresses the issue and provides that a school board is a political subdivision, not an arm of the state. *See* Ohio Rev. Code § 2744.01(F); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) ("Under Ohio state law the 'State' does not include 'political subdivisions,' and 'political subdivisions' do include local school districts. ... [A] local school board such as petitioner is more like a county or city than it is like an arm of the State."); *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 578 F. Supp. 1091, 1097 (S.D. Ohio 1984) (noting "Ohio's local school districts are in fact separate and autonomous entities" from the state); *Adamsky v. Buckeye Local Sch. Dist.*, 653 N.E.2d 212, 213 (Ohio 1995) (citing Ohio Rev. Code § 2744.01(F)) (noting "a school board is a political subdivision" because it is included in the Political Subdivision Tort Liability Act, which provides statutory immunity for political subdivisions not already shielded by Eleventh Amendment immunity).

Given Sizemore's express concession (*see* Pl.'s Resp. at #260), coupled with the well-settled law showing that the Board is not an arm of the state, the Court concludes that dismissing the official-capacity claims against the Individual School Defendants is proper. Sizemore's concession in this regard applies equally to all of

---

This exception only allows for injunctive relief and attorneys' fees, not monetary damages. *Id.*

the Title VII, Chapter 41 and § 1983 official-capacity claims (i.e., the official-capacity individual claims under Counts I, II, and III). (*Id.*). Moreover, as there is no possible set of additional facts that could change this outcome, the Court dismisses the official-capacity claims against these individual defendants with prejudice.[6]

## B. The Board Is Entitled To Dismissal Of Both Sizemore's Title VII Retaliation And § 1983 Claims.

The pending motion also seeks dismissal of Count II (Title VII and Chapter 41 retaliatory discharge/constructive discharge claim) and Count III (§ 1983 claim) against the Board. As to the former, the Court finds that Sizemore has failed to plausibly allege that the Board retaliated against her. More specifically, she has failed to plausibly allege a causal link between any alleged protected activity and any materially adverse action by the Board, a necessary element for a viable retaliation claim. And as to the latter, Sizemore's § 1983 claim likewise fails as a matter of law. *Respondeat superior* does not apply to § 1983 claims, so Sizemore must plausibly allege misconduct by the Board itself. This would typically be accomplished by plausibly alleging that the Board had a policy or custom of tolerating inappropriate workplace behavior. That is what Sizemore seeks to do here, but her Second Amended Complaint falls well short of the necessary allegations.

---

[6] Because these claims are dismissed based on Sizemore's concession that dismissal is appropriate given the arm-of-the-state finding, the Court need not address whether each of Sizemore's various official-capacity claims against the Individual School Defendants otherwise falls short, and the Court thus does not do so. That being said, the Court notes that those claims faced at least an uphill battle against the Individual School Defendants. For example, Title VII provides a cause of action against a party's "employer," which here is the school district (i.e., the Board), and not, for example, the Principal or individual Board members. In light of Sizemore's concession, however, further exploration of such issues is unnecessary.

1. ***The Title VII Claim Fails As Sizemore Fails To Allege The Board Took Any Retaliatory Action Against Her.***

Title VII's anti-retaliation provision "protects employees from conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Absent direct evidence of retaliation (Sizemore has suggested no such evidence here), the prima facie elements of a retaliation claim are that: (1) Sizemore engaged in protected activity under Title VII; (2) the exercise of her protected rights was known to the Board; (3) the Board thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the adverse action.[7] *See Barrow v. City of Cleveland*, 773 F. App'x 254, 261 (6th Cir. 2019); *see also Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568–70 (6th Cir. 2019) (discussing the Title VII retaliation framework post-*Burlington Northern*). Importantly, the last prong requires but-for causation, "meaning the plaintiff must furnish evidence that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Barrow*, 773 F. App'x at 261 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

---

[7] This Court is aware, as indicated above, that satisfying the prima facie elements in a discrimination case is not a requirement at the pleading stage. As the Second Amended Complaint is devoid of any direct evidence, however, the prima facie elements are a useful guide to determining whether Sizemore has pled a plausible claim. This is not to foreclose the possibility that direct evidence of retaliation may exist or may be elicited during discovery.

As noted above, a plaintiff is not required to establish a prima facie case at the pleading stage. At that same time, of particular import here, while the Sixth Circuit has noted that the standard for pleading causation in a retaliatory discharge case is "minimal," the plaintiff must "put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citation omitted). Here, while Sizemore has shown she engaged in protected activity, she has pled no facts that create a plausible inference of any causal link between that activity and her alleged adverse employment action.

### a. Sizemore Engaged In Protected Activity.

There is little question that reporting alleged sexual misconduct in the workplace is a protected activity under Title VII. *See, e.g.*, *Curtis v. Hanger Prosthetics & Orthotics, Inc.*, 101 F. App'x 61, 65 (6th Cir. 2004) (assuming, without deciding at the pleading stage, that "it is undisputed that [the employees] engaged in protected activity by reporting … sexual harassment."); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (taking "an overt stand against suspected illegal discriminatory action," e.g., reporting sexual misconduct, is a protected activity). In the school setting, sexual misconduct may also give rise to a Title IX violation, and that statute likewise makes reporting a protected activity. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 180 (2005) (noting "sexual harassment is intentional discrimination encompassed by Title IX" and that "[r]eporting incidents of discrimination is integral to Title IX enforcement and would be discouraged if retaliation against those who report went unpunished."); *Bose v.*

*Bea*, 947 F.3d 983, 988–89 (6th Cir. 2020) (noting that "[i]n unpublished authority, however, we have analogized to Title VII retaliation claims" in the Title IX context).

Here, Sizemore's Second Amended Complaint sets forth three instances of alleged protected activity, each of which could potentially support a retaliation claim. Sizemore first recounts that throughout her employment, but specifically in September 2017, she reported Benjamin's alleged workplace misconduct to her supervisor. (SAC at ¶ 26, #205). That is protected reporting activity. Second, she alleges that, in November of 2017, she reported to Principal Slamer, Assistant Principal Reuther, and Teresa Lewis (her supervisor), that Benjamin had engaged in "improper sexual conduct" by taking a photograph of a student and telling another that he was "saving [the photo] for later." (*Id.* at ¶¶ 30, 32, #205, 206). That is also protected conduct. Finally, she alleges that on August 10, 2018, she reported to Human Resources that, in July of 2018, Benjamin physically assaulted her in a closet on school grounds.[8] (*Id.* at ¶ 42, #207).

### b. The Board Plausibly Knew About The Protected Activity.

Sizemore has likewise plausibly pled facts showing that the Board had knowledge of her protected activities. *See Barrow*, 773 F. App'x at 262. In most cases, there will be direct evidence of an employer's knowledge about a plaintiff who engages

---

[8] While each of these is protected activity, the last one is a non-starter as a basis for a retaliation claim. Sizemore alleges that she reported Benjamin's alleged misconduct on August 10, 2018, left work that day, and never returned. On that timeline, there is no plausible way the Board *could* have retaliated against her, as she was no longer an employee. The other two instances of protected activity, however, could plausibly give rise to a retaliation claim.

in protected activity. *See Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). But "[d]irect evidence of the [employer's] knowledge or awareness is not required" to establish, let alone plausibly allege, this element. *Barrow*, 773 F. App'x at 262. (quoting *Mulhall*, 287 F.3d at 552). Instead, there must just be "sufficient evidence to support the inference that the employer knew of the protected activity." *Id.* (quotation omitted); *see Mulhall*, 287 F.3d at 552 (inferring the employer's knowledge because the employer "took an action with respect to the plaintiff, other than the challenged action, from which it could be inferred that the [employer] was aware of the plaintiff's grievance").

Case law suggests that when an employee engages in protected activity by reporting discrimination or harassment to a supervisor, that is sufficient to impute knowledge about that activity to the employer. *See, e.g.*, *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003) (finding, at summary judgment, that when "Plaintiff … notified [his manager] that he had witnessed [another employee's] racial discrimination and would testify to it in a court of law," the second prima facie element was satisfied); *Alexander v. Univ. of Ky.*, No. 5:10-cv-48-REW, 2012 WL 1068764, at *16 (E.D. Ky. Mar. 28, 2012) (finding, at summary judgment, that the employer knew about protected activity when an employee reported discrimination to the University of Kentucky's Assistant Vice President of Institutional Equity, because she "was a UK employee acting in an official capacity when she received those complaints, there can thus be no dispute that UK knew of" the employee's protected activity); *Laporte v. B.L. Harbert Int'l., LLC*, No. 5:09-cv-219, 2010 WL

2541154, at *2 (W.D. Ky. June 18, 2010) ("Opposing conduct protected by Title VII includes complaining to anyone about alleged discrimination against oneself or others. Implicit in this allegation is that [the] employer was aware of Plaintiff's exercise of a protected right.") (quotation and citation omitted).

Here, the Court finds that Sizemore has plausibly alleged that the Board was aware of the protected activity set forth in Sizemore's Second Amended Complaint. Her reporting activities to Teresa Lewis are sufficient, if perhaps barely, to impute knowledge of that reporting activity to the Board in September 2017. Similarly, her reporting in November 2017, is also sufficient, as Sizemore informed both her supervisor and two school administrators about the alleged incident with Students A and B. In short, Sizemore has plausibly alleged that she engaged in protected behavior—i.e., reporting workplace misconduct—and that the Board was aware of that reporting activity as it occurred.

### c. The Board Arguably Took Materially Adverse Action Against Sizemore.

The third element of a retaliation claim is that the Board took a materially adverse action against Sizemore. *See Laster*, 746 F.3d at 731. An action is materially adverse if "a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Jones v. Johanns*, 264 F. App'x 463, 468–69 (6th Cir. 2007) (quoting *Burlington N.*, 548 U.S. at 67–68). In this inquiry, "'[c]ontext matters. The real societal impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and

relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" *Laster*, 746 F.3d at 731 (quoting *Burlington N.*, 548 U.S. at 69). "'An act that would be immaterial in some situations is material in others.'" *Id.* (quoting *Burlington N.*, 548 U.S. at 82).

Sizemore's allegation on this front appears to be that, despite reporting Benjamin's conduct to her supervisor, she was continually scheduled to work with him, including on the day he allegedly sexually assaulted her. It is perhaps an interesting question whether continuing to schedule a worker to work with a particular co-worker would suffice, on a fully developed factual record, to meet this element. For now, though, assuming her allegations about Benjamin's behavior are true (which the Court must accept as true), and that her supervisor forced her to continue working with him with full knowledge of that behavior (which the Court must also accept as true), resulting in her being sexually assaulted in the supply closet in July 2018, this is sufficient to create a plausible inference that she suffered a materially adverse action.[9]

---

[9] Sizemore's use of the phrase "constructive discharge" in Count II of the Second Amended Complaint is also relevant here. While she seems to assert that "constructive discharge" is some kind of free-standing employment claim under Title VII or state law, that is not the case. Rather, "constructive discharge" is a label for a particular kind of adverse employment action. *See generally Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004) (discussing constructive discharge in a Title VII "sexual harassment or hostile work environment" scenario). The label typically arises where the employee has quit his or her job before bringing suit. In such cases, the employer may seek to defend itself by claiming that the employee did not suffer a materially adverse action because he or she voluntarily quit. *See id.* (noting the affirmative defense afforded to employers). Constructive discharge is a way of overcoming that argument. It allows the employee to show that, although the employee quit, in fact, the job conditions were so intolerable that the act of quitting should not be viewed as "voluntary," but actually should be treated as an involuntary discharge, and thus as a materially adverse action. *See id.* at 147 ("A hostile-work environment constructive discharge claim entails … working conditions so intolerable that a reasonable person would have felt

### d. Sizemore Has Failed To Allege Facts Showing Any Causal Connection Between Her Protected Activity And The Materially Adverse Action.

The problem for Sizemore arises in connection with the fourth prong of a retaliation claim, which analyzes whether the adverse action was deliberately undertaken by an employer in response to, i.e., was caused by, the employee engaging in protected activity. Not surprisingly, such a causal link is central to the notion of "retaliation," which the Cambridge English Dictionary defines as "do[ing] something harmful to someone because they have done or said something harmful to you." *Retaliation*, Cambridge English Dictionary Online, Cambridge Univ. Press (2020), https://dictionary.cambridge.org/us/dictionary/english/retaliation (last visited Apr. 13, 2020). As noted above, at the pleading stage, Sizemore need only set forth minimal facts plausibly alleging that this is the case. *See Dixon*, 481 F.3d at 333. But she has failed to do so. Her Second Amended Complaint contains no factual material plausibly suggesting that the materially adverse actions that she alleges she suffered were the result of the Board retaliating against her for engaging in the protected activity that she describes. Absent such allegations, she cannot move forward with her retaliation claim.

To plausibly allege a causal connection between protected activity and an adverse action, a plaintiff must put forth some fact creating an inference that the adverse action would not have occurred without the employee first engaging in

---

compelled to resign"). Because the Court has found that Sizemore plausibly alleged that she suffered a materially adverse action, the Court need not address at this time whether the label "constructive discharge" also accurately captures the nature of the materially adverse action here.

protected activity. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). This causal link can be shown two ways, either (1) through direct evidence or (2) through "knowledge coupled with a closeness in time that creates an inference of causation." *Id.* at 566. There is no single factor that is dispositive in establishing a causal connection, but "evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.*; *see also Abbott*, 348 F.3d at 542–43 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981)). "To establish the causal connection that the fourth prong requires, the plaintiff must produce sufficient evidence from which one could draw the inference that the employer would not have taken the adverse employment action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott*, 348 F.3d at 543 (citing *Nguyen*, 229 F.3d at 563; *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). As Sizemore has alleged no direct evidence, she attempts to proceed by establishing temporal proximity (either with or without attendant facts) and by demonstrating disparate treatment. She fails to minimally, let alone plausibly, allege either.

### i. *Sizemore's Reliance On Temporal Proximity Alone Is Insufficient To Establish A Causal Connection.*

In some cases, "temporal proximity between the protected activity and the adverse action, in and of itself, is sufficient to establish a causal connection." *Nguyen*, 229 F.3d at 566 (collecting cases). "In analyzing the facts in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an

inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400–01 (6th Cir. 2010). This is to say, "on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive," but usually "evidence in addition to temporal proximity is required to permit the inference." *Id.* at 401. Conversely, "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with 'other evidence of retaliatory conduct to establish causality.'" *Id.* at 400 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524–25 (6th Cir. 2008)).

The Supreme Court has implied that temporal proximity alone is insufficient to establish a causal connection in the retaliation context when there is a lapse of more than three months between the protected activity and the allegedly adverse action. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). "The cases that accept mere temporal proximity … as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Id.* (quotation omitted) (finding cases with three- and four-month gaps to be insufficient). And even then, when a "plaintiff's retaliation case [is] otherwise weak," mere "temporal proximity alone [is] not particularly compelling." *Nguyen*, 229 F.3d at 566. *See also, e.g.*, *Kean v. IT-Works, Inc.*, 466 F. App'x 468, 471 (6th Cir. 2012) (holding that, absent other evidence of retaliation, a two-and-a-half-month gap is not sufficient to support an inference of causation).

While it may be true that "this Circuit has not adopted a uniform approach on whether causal connection may be established solely on the basis of temporal

proximity," *Krumheuer v. GAB Robins N. Am., Inc.*, 484 F. App'x 1, 5 (6th Cir. 2012), under any reasonable standard, Sizemore's allegations here do not create a plausible inference of causality based on temporal proximity alone. Part of the problem is that the Second Amended Complaint is a little ambiguous about when the allegedly protected activity (i.e., reporting) occurred, suggesting that she was reporting Benjamin's alleged misconduct beginning in September of 2017, and continuing "throughout her employment." (*See* SAC at ¶ 26, #205). The only other date she specifies is her November 2017 reporting regarding the photograph. (*See id.* at ¶¶ 26–37, #205–06). But against that backdrop, she alleges only one particular event as reflecting the Board's alleged retaliatory conduct: Teresa Lewis assigning Sizemore and Benjamin to work together in July 2018. (*Id.* at ¶ 38, #206–07). In fact, far from alleging *retaliation* in advance of July 2018, she specifically alleges "inaction." (*See, e.g.*, *id.* at ¶¶ 26–29, #205 (alleging her supervisor followed a "policy of inaction" and that the "Defendants took no action")). This single instance of alleged retaliatory conduct, which occurred more than six months after she began the protected activity, lacks sufficient temporal proximity to establish a causal connection, even for pleading purposes. Perhaps if she had identified some way in which her protected activity changed in the immediate temporal vicinity of the allegedly retaliatory act, that may be different, but that is not what she alleged in her Second Amended Complaint.

Her final example, her reporting activity in August 2018, when she informed Human Resources about Benjamin's alleged assault, fails as a matter of law on the causation front for a different reason. In particular, immediately after reporting him,

she left work never to return. Thus, the Board did not have an opportunity to retaliate against her, even had it intended to do so (and there is no reason to believe that it did).

ii. *Temporal Proximity And Attendant Facts Are Also Insufficient To Establish A Causal Connection.*

Sizemore could perhaps overcome the lack of temporal proximity as to the first two reporting activities if she had identified additional facts supporting a causal connection. But the Second Amended Complaint provides precious little detail regarding any alleged causal link beyond the alleged temporal proximity. She asserts no fact that implies that the alleged adverse action (i.e., scheduling her to work with Benjamin) was done *in retaliation for* her engaging in protected activity. That is, there are no factual allegations suggesting that either the Board or her supervisor, after she undertook any of her alleged reporting activity, intended to punish her for having done so. There is also nothing that suggests Sizemore's supervisor understood her reporting Benjamin's behavior as even involving a serious allegation, or at least as serious as Sizemore intended it to be. (*See generally* SAC at ¶¶ 17–51, #204–08). Rather, Sizemore alleges that her supervisor responded by saying that Benjamin was "creepy[,]"was "goofin' around," and that her supervisor generally *refused* to take any action—such inaction seems the antithesis of retaliation. (*Id.* at ¶ 27, #205). Nor does Sizemore point to any attendant fact, beyond the work assignment itself, that would make it appear likely that her supervisor or the Board had animus toward her—for example, alleging that, as a result of the reporting, they ordered her to undertake substantial additional work, or threatened to reduce her pay, or gave her bad

performance evaluations, or anything of the kind. (*See generally id.* at ¶¶ 17–51, #204–08). In short, she identifies nothing that changed as a result of her engaging in the allegedly protected activity, and thus she has not articulated a plausible claim of retaliation.

### iii. *Sizemore's Allegations Of Disparate Treatment Are Likewise Insufficient To Establish A Causal Connection.*

Perhaps recognizing this weakness, Sizemore separately tries to show a plausible case of causation through comparisons to her co-workers—alleging that she was "treated worse than other employees who did not report sexual harassment." (*See* SAC at ¶ 49–50, #208). But on this front, she offers only that bald assertion, rather than alleging any actual facts to back it up. Sizemore does not say, for example, that other janitors got to select the co-workers with whom they would work, or anything else along those lines. Nor does she say that other's reports of sexual harassment were investigated differently. Her two-sentence assertion of disparate treatment, standing alone with no factual support, is insufficient to plausibly establish a causal connection, whether considered alone or in conjunction with her other allegations.

### e. Conclusion.

The Second Amended Complaint plausibly alleges that Sizemore engaged in protected reporting activity, that the Board (and at least her supervisor, which is enough for present purposes) knew of one or more of the reporting incidents, and that at some point after engaging in the reporting activity, she suffered a materially adverse action. What she fails to plausibly allege, though, even reading all of the facts in the light most favorable to her, is that the Board took any action toward her that

was meant to "punish" her for engaging in protected activity. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Sizemore's Title VII retaliation claim against the Board.

> **2. *Sizemore's Claims Against The Board Pursuant To Revised Code Chapter 41 Fail For The Same Reason.***

Analysis of Sizemore's state law retaliation claim against the Board mirrors the analysis of her federal law Title VII claim. *See Conley v. City of Findlay*, 266 F. App'x 400, 404 (6th Cir. 2008) ("The Ohio Supreme Court has held that the analysis used to evaluate claims under [Ohio Rev. Code] § 4112.02 is identical to the analysis used for Title VII."); *Scott v. FirstMerit Corp.*, 167 F. App'x 480, 487 (6th Cir. 2006) (failing to "identify any reason why the state-law [discrimination] claims should be treated differently" than the federal Title VII claims, and resolving them "in the same way under the same framework"). For the same reasons that Sizemore's Title VII retaliation claim fails, so too does her claim under state law. Accordingly, the Court **DISMISSES** her Ohio Rev. Code § 4112 retaliation claim against the Board **WITHOUT PREJUDICE**.

> **3. *Sizemore's § 1983 Claim Against The Board Fails As A Matter Of Law.***

The Board likewise moved to dismiss Sizemore's 42 U.S.C. § 1983 claim on the merits. In order to survive dismissal of this claim, Sizemore must plausibly allege that she was (1) deprived of a federal right (2) by someone acting under the color of law. *See Baker v. McCollan*, 443 U.S. 137, 147 (1979). She fails to do so.

As a threshold matter, Sizemore cannot rely on her rights under Title VII as grounds for satisfying this first prong. "[A]n employee may sue her public employer

under both Title VII and § 1983," but the § 1983 claim survives only when it "rests on a claim of infringement of rights guaranteed by the Constitution." *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) (citing *Grano v. City of Columbus*, 637 F.2d 1073, 1082 (6th Cir. 1980)). In other words, if the federal right of which a party was allegedly deprived is a right guaranteed by Title VII, then Title VII, not § 1983, provides the exclusive vehicle for vindicating that right.

Recognizing this, Sizemore attempts to base her § 1983 claim on an alleged substantive Due Process violation, not the alleged Title VII violation. She asserts that "as a direct and proximate result of the actions and inactions of Defendant Edgewood Board of Education, Plaintiff has been deprived of her constitutional right to personal security and bodily integrity which is protected under [sic] substantive component of [sic] due process clause of the US [sic] Constitution." (SAC at ¶ 69, #211).

To Sizemore's credit, there is little doubt that the substantive component of the Fourteenth Amendment's Due Process Clause "certainly encompasses the right not to be sexually assaulted under the color of state law." *Doe v. Claiborne Cty.*, 103 F.3d 495, 505, 507 (6th Cir. 1996); *Doe v. Big Walnut Local Sch. Dist. Bd. of Educ.*, 837 F. Supp. 2d 742, 751 (S.D. Ohio 2011) (recognizing *Doe* but declining to extend that constitutional right to encompass "verbal taunting or bullying" (quotation and citation omitted)). But importantly, Sizemore does not allege the Board itself engaged in such assault. Rather, she tries to hold the Board liable under § 1983 for the alleged conduct of her co-worker, Benjamin.

25

In doing so, she runs into a separate problem—§ 1983 does not provide for *respondeat superior* liability. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Recognizing this too, Sizemore alleges that the constitutional violation resulted from an inadequate policy, training, or response by the Board. (*See* SAC at ¶ 61, #210). But under *Monell*, the Board "cannot be found liable" unless a plaintiff can establish the Board maintained "an officially executed policy," or that it tolerated a custom of behavior that "leads to, causes, or results in the deprivation of a constitutionally protected right." *Claiborne Cty.*, 103 F.3d at 507 (citing *Monell*, 436 U.S. at 690–91). In other words, Sizemore must allege either (1) an officially executed policy permitting sexual harassment or (2) a custom, pursuant to which the Board has essentially blessed that type of behavior. *See id.*

Sizemore does not allege that the Board has an official policy of tolerating sexual misconduct, and it would be surprising if that were the case. Thus, she must allege sufficient factual matter to plausibly show that the Board had a "custom" in that regard.

But "custom" has a particular meaning in the § 1983 context. It refers to something that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. This "notion of 'law' must include deeply embedded traditional ways of carrying out state policy" and must "reflect a course of action deliberately chosen from among various alternatives." *Claiborne Cty.*, 103 F.3d at 507–08 (citations omitted). There must also be "a direct causal link between the custom and the constitutional deprivation; that is 'she must show that

the particular injury was incurred *because of* the execution of that policy.'" *Id.* at 509 (emphasis in original) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "This requirement is necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Id.*

Sizemore has alleged nothing of the sort. She has alleged no facts suggesting that the Board has a "deeply embedded custom" of tolerating Benjamin's type of alleged misbehavior. Sizemore's argument—that the Board had a policy of ignoring sexual misconduct—is further undercut by the fact that when she reported Benjamin's alleged conduct related to Students A and B, the Board (or at least the Principal, Vice Principal, and Teresa Lewis) *did* do something—they held a meeting with those involved. (SAC at ¶¶ 30–33, #205–06). Admittedly, Sizemore disagreed with the outcome of that situation. (*Id.* at ¶¶ 35–37, #206). But legal conclusions and disagreement with how school officials investigated and resolved allegations of misconduct are insufficient to substantiate her § 1983 custom and practice claim.

In fact, a review of her allegations on this front shows that it consists almost exclusively of "'labels and conclusions' [and] 'a formulaic recitation of the elements of a cause of action[,]'" the very things that the Supreme Court has said are not enough. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). She states:

¶ 65. Defendant's policy of inaction created a clear and persistent patter [sic] of activity or inactivity by the employees of Edgewood Board of Education.

¶ 66. Defendant Edgewood Board of Education had actual or constructive notice of the deprivation of plaintiff's constitutional rights.

¶ 67. Defendant Edgewood Board of Education, by and through their actions and inactions, gave tacit approval of the unconstitutional conduct such that their deliberate indifference in their failure to act amounted to an official policy.

¶ 68. Defendant Edgewood Board of Education's custom was the moving force or direct causal link in the constitutional deprivation to plaintiff.

¶ 69. As a direct and proximate result of the actions and inactions of Defendant Edgewood Board of Education, Plaintiff has been deprived of her constitutional right to personal security and bodily integrity which is protected under [sic] substantive component of [sic] due process clause of the US [sic] Constitution.

¶ 70. The deprivation of her federal right was committed by an induvial [sic] or individuals acting under color of law.

(SAC at ¶¶ 65–70, #210–11). Each of these are legal conclusions, lacking any factual support.

Without some actual facts to support the existence of the alleged "custom," Sizemore cannot move beyond the pleading stage. That being said, if she can identify such factual support—assuming it exists—this claim may survive. Therefore, the Court **DISMISSES** Sizemore's § 1983 claim against the Board, but does so **WITHOUT PREJUDICE**.

Finally, the Court notes that Sizemore has now amended her Complaint twice. If she believes that she has a good-faith basis for setting forth allegations that meet the pleading standards set forth in this Order as to either her Title VII/Chapter 41 retaliation claim or her § 1983 claim against the Board, the Court directs her to file a motion for leave to file a third-amended complaint with the proposed pleading attached. Making this request in passing in the penultimate line of her response memorandum, without attaching the proposed complaint, does not suffice.

28

## CONCLUSION

For the above reasons above, the Court **GRANTS** Defendants' Partial Motion to Dismiss (Doc. 24) and **ORDERS** as follows:

The Court **DISMISSES WITH PREJUDICE**:

a.  Count I's Title VII claim against the Board Members and Principal Slamer in their official capacities;

b.  Count II's Title VII claim against the Board Members and Principal Slamer in their official capacities;

c.  Count I's Revised Code § 4112.02 claim against the Board Members and Principal Slamer in their official capacities;

d.  Count II's Revised Code § 4112.02 claim against the Board Members and Principal Slamer in their official capacities; and

e.  Count III's 42 U.S.C. § 1983 claim against the individual Board Members and Principal Slamer in their official capacities.

The Court **DISMISSES WITHOUT PREJUDICE**:

f.  Count II's Title VII retaliation/constructive discharge claim against the Board;

g.  Count II's Revised Code § 4112.02 retaliation claim against the Board; and

h.  Count III's 42 U.S.C. § 1983 claim against the Board.

**SO ORDERED.**

April 17, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**